UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAD ARNOLD, ) | Case No. EDCV 07-0457 JC |
|           Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
|       v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) Commissioner of Social ) Security, ) | |
|           Defendant. ) | |

## I. SUMMARY

On May 3, 2007, plaintiff Tad Arnold ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrat e Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; May 4, 2007 Case Management Order, ¶ 5.

///

1  Based on the record as a whole and the applicable law, the decision of the
2  Commissioner is AFFIRMED. The findings of the Administrative Law Judge
3  ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 23, 2004, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 93-105). Plaintiff asserted that he became disabled on May 22, 1996, due to post traumatic stress disorder, spinal compression, heart attack, memory problems, depression, and anxiety.[2] (AR 94, 111-120). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) on January 5, 2006 and May 20, 2006. (AR 460-482, 483-505).

On July 10, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 14-22). Specifically, the ALJ found: (1) plaintiff suffered from the following severe combination of impairments: degenerative disc disease of the cervical and lumbar spine; atherosclerotic heart disease, status post old myocardial infarction, status post multiple stent placements; hypertension; mood disorder, not otherwise specified, mild, with mixed personality traits with narcissistic and histrionic features; and history of illicit drug addition in remission with possible narcotic medication addition (AR 16); (2) plaintiff's impairments, considered singly or in combination, did not meet

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2]Although plaintiff alleged that he became disabled on May 22, 1996, supplemental security income is not payable prior to the month following the month in which the application is filed. See 20 C.F.R. § 416.335.

1  or medically equal one of the listed impairments (AR 19); (3) plaintiff could
2  perform a full range of light work[3] (AR 21);[4] (4) plaintiff could not perform his
3  past relevant work (AR 20); (5) there are jobs that exist in significant numbers in
4  the national economy that plaintiff could perform (AR 21).

     The Appeals Council denied plaintiff's application for review.  (AR 5-8).

## III.  APPLICABLE LEGAL STANDARDS

### A.  Sequential Evaluation Process

     To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any

///

---

[3] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, one must have the ability to do substantially all of these activities.  If someone can do light work, she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  See 20 C.F.R. § 416.967(b).

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  See 20 C.F.R. § 416.967(a).

[4] Specifically, the ALJ determined that plaintiff:  (i) could lift, carry, push, or pull twenty pounds occasionally, and ten pounds frequently; (ii) could stand or walk frequently with customary breaks; (iii) could sit frequently with customary breaks; and (iv) had no significant medically determinable nonexertional limitations.  (AR 19).

other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work?[5] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262

---

[5] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).

When a claimant suffers only exertional (strength-related) limitations, the ALJ must consult the Grids.  Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir.), as amended (2006).  When a claimant suffers only non-exertional limitations, the Grids are inappropriate and the ALJ must rely on other evidence.  Id.  When a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of disability with respect to exertional limitations.  See Lounsburry, 468 F.3d at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the claimant must be awarded benefits.  Cooper, 880 F.2d at 1155.  If not, and if the claimant suffers from significant and sufficiently severe non-exertional limitations, not accounted

///
///
///
///
///
///

for in the Grids, the ALJ must take the testimony of a vocational expert.[6]  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

      The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

      **B.**    **Standard of Review**

      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

---

[6] An ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to the make the Grids inapplicable to the particular case.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).  The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Id.

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.   The ALJ Properly Considered Plaintiff's Allegations of Side Effects from His Medication

Plaintiff argues the ALJ erred by failing to consider properly the alleged side effects of plaintiff's medications, Zoloft and Elavil.  (Plaintiff's Motion at 2). This Court disagrees.

#### 1.   Relevant Facts

In a "Disability Report Adult" form apparently completed by plaintiff's wife on March 18, 2004, plaintiff alleged his medication, Elavil, caused "drowsiness, dizziness, weakness."  (AR 117).  In two "Disability Report-Appeal" forms completed on July 22 and November 15, 2004, plaintiff indicated two of his medications, Zoloft and Elavil, caused fatigue.  (AR 133, 157).  There are no other complaints in the record that these drugs caused side effects.  The record also does not reflect that plaintiff ever made these complaints to any of his treating physicians, including during 2004 when the disability reports were completed.  In addition, plaintiff received at least two additional prescriptions for Elavil from a treating physician in June and July 2004 without any comment regarding side effects.  (AR 292).  During the January and May 2006 hearings, plaintiff did not testify that he suffered any side effects from these medications.  (AR 469-502). Plaintiff did, however, complain that he had trouble sleeping and felt fatigued

///

during the day. (AR 499-500). He did not attribute such fatigue to Zoloft, Elavil or any other medication.

The ALJ's decision reflects that he considered the entire record. (AR 16). The ALJ made the following findings, among others:

> After considering the evidence in the record, I find that [plaintiff]'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. As noted, his medical treatment has generally been limited and conservative in terms of his musculoskeletal impairments, and the treating cardiologists who have had the longest contact with [plaintiff] have been quite concerned about his continued smoking, his inconsistent history of medication side effects, and his failure to take his medications as needed.

(AR 20). The ALJ cited to a report by plaintiff's treating cardiologist who noted, "[plaintiff] is unable to take many cardiac medications, states he has allergies to them . . . There is specifically no history of an iodine allergy." (AR 262).

The ALJ also found that: (i) complaints in plaintiff's prehearing statements were "not corroborated by evidence in the record"; (ii) the record showed plaintiff "grossly exaggerated" his symptoms; and (iii) plaintiff "repeatedly exaggerated his medical history. . .as did his spouse in the one report of record she clearly completed." (AR 20). The ALJ concluded, "[i]t is clear then that [plaintiff] and his spouse are not credible." (AR 20).

### 2. Relevant Law

An ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication. Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir.1993) (citing Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.1988), relief modified, 859 F.2d 1396

(1988)). "[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized." Varney, 846 F.2d at 585. Thus, when a claimant testifies about experiencing a known side effect associated with a particular medication, the ALJ may disregard the testimony only if he "support[s] that decision with specific findings similar to those required for excess pain testimony." Id.

A claimant's subjective statement regarding a symptom must be supported by objective medical evidence, generated by medically acceptable techniques, of an underlying impairment, "which could reasonably be expected to produce the . . . symptoms alleged." 42 U.S.C. § 423(d)(5)(A). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins v. Social Security, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted). An ALJ may not disregard such a complaint solely because it is not substantiated affirmatively by objective medical evidence. Id. Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, the ALJ may reject a claimant's complaints regarding the severity of his symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. Id. (citations omitted). To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective statements (e.g., reputation for dishonesty), conflicts between the claimant's statements and the claimant's conduct, or on internal contradictions. Id. (citation omitted).

A claimant bears the burden of demonstrating that his use of medications caused a disabling impairment. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985) (claimant failed to meet burden of proving medication impaired his ability to work because he produced no clinical evidence).

///

### 3. Analysis

First, as the ALJ expressly considered "the entire record" and specifically referenced plaintiff's treating cardiologist's statements regarding plaintiff's inconsistent history of side effects from other medication, this Court deems it reasonable to infer that the ALJ did in fact consider plaintiff's complaints regarding side effects from Zoloft and Elavil, even though the ALJ did not specifically discuss such alleged side effects. An ALJ is not required to discuss every piece of evidence in interpreting the evidence and developing the record. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Second, as the only evidence in the record that plaintiff suffered side effects from Zoloft and Elavil are the statements of plaintiff and his wife – whose credibility the ALJ properly rejected, it was not necessary for the ALJ specifically to discuss such alleged side effects. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ only required to explain why probative evidence has been rejected). As indicated above, the ALJ found plaintiff's testimony regarding the "intensity, duration and limiting effects" of his symptoms was "not entirely credible[,]" and noted that medical findings in the record did not support plaintiff's claims and that both plaintiff and his spouse repeatedly exaggerated plaintiff's medical history and the extent of plaintiff's symptoms. The ALJ further pointed to the inconsistency between plaintiff's complaints of disabling symptoms and the limited and conservative course of treatment. (AR 20). These reasons are clear and convincing. As defendant points out, plaintiff does not argue otherwise. (Defendant's Motion at 2) ("Plaintiff has not challenged the ALJ's credibility determination regarding Plaintiff's subjective complaints.").

Finally, plaintiff's contention fails because the record is devoid of any clinical evidence to suggest that plaintiff's alleged side effects from Elavil and Zoloft were disabling. As noted above, the record does not reflect that plaintiff even mentioned the alleged side effects to his physicians.

Accordingly, plaintiff fails to demonstrate that reversal or remand are appropriate based upon the ALJ's failure specifically to consider and discuss plaintiff's alleged side effects from Zoloft and Elavil.

**B.   The ALJ Did Not Pose an Incomplete Hypothetical to the Vocational Expert**[7]

Plaintiff alleges that the reversal or remand is appropriate because the ALJ erroneously omitted the "significant side effects [p]laintiff experiences from his medications" from the hypothetical question posed to the vocational expert. (Plaintiff's Motion at 4). Defendant responds that the ALJ included all limitations consistent with the supporting medical evidence as required and that the record contains no clinical or credible evidence that plaintiff suffered from such side effects. (Defendant's Motion at 4). This Court agrees with defendant.

As discussed above, a hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995));

---

[7]The ALJ engaged in the following discussion with the vocational expert:

Q:  I'd like you to consider a person of [plaintiff]'s vocational background. He is a younger individual for Social Security disability purposes. The record reflects 14 years of education. He has no past relevant work based on the earnings record. Consider the residual functional capacity . . . is for the ability to lift 20 pounds occasionally, 10 frequently, stand, walk two out of eight, sit six out of eight, no postural limitations, no manipulative or visual, no environmental limitations. That describes work at what, if any, exertional level?

A:  At the limited range of light work, Your Honor.

Q:  Also consider that the work should be unskilled entry level, is there any work that can be performed at the limited light level at the unskilled and entry level capacity?

(AR 502-03). The vocational expert then identified jobs which the hypothetical individual would be able to perform. (AR 503).

Embry v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (citing Gardner v. Secretary, 815 F.2d 1275, 1280 (9th Cir. 1987)) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights.") (emphasis in original).  However, an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record.  Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citation omitted).

As discussed in the previous section, plaintiff's claim that he suffered side effects from Zoloft and Elavil is supported by no credible or substantial evidence in the record.  Accordingly, the ALJ properly omitted such alleged side effects from the hypothetical question posed to the vocational expert.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   July 7, 2008

                                             /s/
                                Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE